# United States Court of Appeals for the Federal Circuit

2008-3139

JOHN DOE,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Richard L. Swick, Swick & Shapiro, P.C., of Washington, DC, argued for petitioner.

Sean B. McNamara, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3139

JOHN DOE,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of the Merit Systems Protection Board in CH0752040620-B-1.

_____

DECIDED: May 11, 2009

_____

Before BRYSON, DYK, <u>Circuit Judges</u>, and PATEL, <u>District Judge</u>.[*]
Opinion for the court filed by <u>District Judge</u> PATEL. Dissenting opinion filed by <u>Circuit Judge</u> BRYSON.

PATEL, <u>District Judge</u>.


Petitioner John Doe appeals the final decision of the Merit Systems Protection Board ("MSPB" or "Board"). <u>Doe v. Dep't of Justice</u>, CH-0752-04-0620-B-1 (M.S.P.B. Dec. 4, 2007). Doe was removed from his position as a Special Agent by the Federal Bureau of Investigation ("FBI" or "agency") based on a charge of "unprofessional conduct." Following a dismissal of Doe's internal agency appeal, Doe sought review before the Board. Two Initial Decisions by an MSPB Administrative Judge ("AJ") and

---

[*] The Honorable Marilyn Hall Patel, District Judge, United States District Court for the Northern District of California, sitting by designation.

petitions for review by the FBI followed, and the Board twice sustained Doe's removal. Before this court, Doe contends that the FBI failed to establish a sufficient nexus between Doe's charged off-duty misconduct and his FBI employment, i.e., the efficiency of the service, and that the penalty of removal was unjustified. For the reasons set forth below, we vacate the Board's final decision and remand with instructions.

BACKGROUND

Doe was initially employed by the FBI in January 1997. Prior to his removal, Doe worked as a Special Agent pilot near an FBI Field Office in Ohio. While Doe was off duty, he had consensual sex with a female member of the FBI's support staff ("Female #1"), whom he was dating. Doe and Female #1 videotaped their sexual encounters, at her suggestion. However, Doe also videotaped his separate consensual sexual encounters at his residence with another female FBI employee ("Female #2") as well as with one woman who was not an employee ("Female #3").

This aspect of Doe's private life came to be known by the FBI through the actions of Female #1. In October 2002, while Doe was out of town, Female #1 entered his house and found the tapes, each with a videotaped partner's name labeled on it. She contacted Doe and together, with the assistance of a professional counselor, they worked out the problems the tapes revealed about their relationship. Later, she shared her concerns with, and revealed the existence of the tapes to, counselors in the FBI Employee Assistance Program. From that point rumors spread about Doe and female co-workers at the FBI, which were upsetting to Female #1 and Female #2.

In March 2003, in response to these rumors, the Office of Professional Responsibility ("OPR") of the FBI began to investigate. Doe admitted to videotaping the

three women, on occasion, without their knowledge or consent. In March 2004, the OPR concluded that Doe's off-duty behavior, specifically videotaping sexual encounters with women without their consent, was unprofessional conduct and "contrary to the FBI's suitability requirements." In discussing whether Doe's conduct was sanctionable, the OPR decision memorandum stated that Doe's non-consensual taping activities "may have constituted a violation of criminal law." Based on these findings, Doe was removed from employment with the FBI on June 9, 2004. At the time of that decision, the deciding official Jody Weiss, then Deputy Assistant Director of OPR, and Doe's supervisor Gary Klein, Assistant Special Agent in Charge, both believed that Doe's conduct had violated the Ohio state voyeurism law.

The FBI's Disciplinary Review Board sustained Weiss' decision on June 7, 2005. Doe timely appealed the FBI's removal action to the MSPB. On October 26, 2005, an AJ conducted an evidentiary hearing regarding Doe's removal. In a March 2006 Initial Decision, the AJ reversed the removal, finding no legal nexus between Doe's off-duty personal conduct and "the efficiency of the agency's operation" nor with the performance of Doe's work duties. In his analysis, the AJ found insufficient evidence that Doe's conduct violated Ohio state law and, moreover, held that the FBI's policy regarding the intimate relationships of its employees did not support extending the review of the legality of Doe's conduct in jurisdictions other than the state of Ohio. The AJ found no evidence that Doe ever discussed his videotaping activity with anyone other than Female #1, prior to the April 2003 investigation, nor that Doe had ever shown the tapes to any other person, including Female #1. The AJ held that Doe was neither responsible for the rumors that circulated at the Field Office, nor for any disruption that

resulted from those rumors. The FBI was ordered to retroactively restore Doe effective June 9, 2004, and transfer back pay, with interest. In accordance with the interim relief provided by the AJ's order, Doe was reinstated and reassigned to a different FBI location in Omaha, Nebraska.

The FBI appealed the Initial Decision to the Board. In an August 14, 2006 decision, the Board held that the agency had established a nexus between Doe's conduct and the efficiency of the service. Relying on evidence that Doe's conduct had adversely affected his division's operations and caused his supervisors to lose trust and confidence in him, the Board reversed the Initial Decision and remanded the case for further adjudication. As to the perceived criminality of Doe's conduct, the Board "agree[d] with the administrative judge that it does not appear to have violated any laws of the state in which it occurred." The Board did not analyze what effect the perception that the behavior was criminal had on the decision to remove Doe.

On remand, considering only the propriety of the removal penalty, the AJ mitigated the penalty to a 120-calendar-day (time served) suspension and a directed reassignment at the FBI's option. The AJ found that Doe's conduct was not actionable under section 1 of the FBI's policy, which addresses conduct or relationships involving violations of the law, because it was not criminal. The AJ found that any conduct by Doe that disrupted the FBI's operation, as a violation of section 2 of the FBI's policy, was mitigated by the workplace disruptions caused by others. The AJ further held that the FBI officials' loss of trust and confidence in Doe was "to some extent grounded in the unsubstantiated belief that the appellant's conducted [SIC] violated a local voyeurism statute." Comparing the penalty that Doe had received for his "morally

wrongful off-duty conduct in his intimate relationships" against a history of similar cases, the AJ concluded that Doe's removal exceeded the tolerable limits of reasonableness.

The FBI then appealed again to the Board, arguing that the AJ erred in finding Doe's removal to be a penalty beyond tolerable bounds of reasonableness. The Board held that intervening acts by others did not absolve Doe of culpability for "clearly dishonest" actions and that his seven-year length of service with no disciplinary record and a history of positive performance reviews did not warrant mitigation. Concluding that the FBI had not failed to weigh any relevant mitigation factors and that Doe's removal was a reasonable penalty, the Board sustained the FBI's removal action.

This appeal followed. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1).

## II. DISCUSSION

This appeal centers on whether the removal of Doe and the Board's decision to sustain that penalty were permissible. See 5 U.S.C. § 7703(c) (Board decisions are affirmed unless they are found to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law . . . or unsupported by substantial evidence."); Modrowski v. Dep't of Veterans Affairs, 252 F.3d 1344, 1353 (Fed. Cir. 2001) (the Board ascertains the reasonableness of an agency's chosen penalty).

To sustain the charge of misconduct, the agency must have established by preponderant evidence the existence of a nexus between the employee's misconduct and the work of the agency, i.e., the agency's performance of its functions. See Brown v. Dep't of the Navy, 229 F.3d 1356, 1358 (Fed. Cir. 2000) (citing Mings v. Dep't of Justice, 813 F.2d 384, 389-90 (Fed. Cir. 1987)). The agency has the burden of proof to

establish that the employee's discipline will "promote the efficiency of the service." 5 U.S.C. § 7513(a).

With respect to the penalty, the Board's decision must carefully scrutinize the circumstances that led to Doe's removal, and specifically state its justification for upholding that decision in order for it to be deemed reasonable. See Lachance v. Devall, 178 F.3d 1246, 1258 (Fed. Cir. 1999) ("The Board must . . . itself precisely articulate the basis for upholding the agency's action. The active process inherent in the precise articulation of any justification as a matter of course requires 'careful' scrutiny of the circumstances: thus, the need for, and legitimacy of, the Board's exercise of its balancing authority with aplomb."). If proper justification does not reveal itself upon careful scrutiny, the agency's penalty cannot be sustained. Id.

In this case, the agency's own regulations circumscribe the conduct the agency may investigate and consider as grounds for removal of an employee. Accordingly, the Board decisions have focused on whether or not the FBI's inquiry into Doe's personal affairs, and attendant disciplinary removal, was in accordance with the FBI's personal relationships policy. The FBI policy does not condone disciplinary consideration of an employee's morality in romantic or intimate relationships in the absence of (1) a violation of criminal law, (2) an adverse impact on the agency's ability to perform its responsibilities, or (3) a violation of an internal regulation. Moreover, the policy affirmatively indicates that OPR may investigate conduct of employees in the context of a personal relationship only if that conduct is criminal, stating:

> OPR does not investigate relationships based upon the morality of romantic or intimate relationships, or upon the marital status or gender of the parties, unless they would realistically be subject to prosecution and thus impact upon the accomplishment of the FBI's mission.

Memorandum from Louis Freeh to All Employees (March 27, 2001).

Respondent proffers two arguments to quiet the dissonance apparent between its policy and its investigation into, and subsequent disciplinary decision based on, Doe's personal relationships. The first argument is that even if Doe's conduct was not criminal in the jurisdiction where it took place, it could be elsewhere. We agree with the AJ and the Board that questioning whether Doe's conduct would have been legal if it had occurred in a different jurisdiction, at least in the circumstances of this case, is immaterial to the review of his removal and need not be considered.

The second argument is that there is a duty of agents to behave honestly at all times, and a potential breach of this duty warrants investigation, regardless of whether he employee's underlying conduct was criminal.[1] Although the FBI suitability standards referred to by respondent do not include explicit guidance on whether an agent must behave honestly in all aspects of an agent's life in order to remain employed, the FBI Employee Handbook states that high standards of conduct must be maintained "not

---

[1] The FBI requires certain suitability standards which must be met for a person to be hired and employed as an agent. Among these are honesty and integrity, which is described as including,

> . . . behavior that shows the person to be honest, trustworthy, self-disciplined, and respectful of laws and regulations; behaviors that display high standards of ethical conduct and actions that are taken without jeopardizing or compromising these standards, even when there are no ramifications for not doing so. Behaviors involve following agency policy and the letter and spirit of the law and avoiding even the appearance of impropriety. This is related to a person's professionalism, ability to maintain a positive image, ability to serve as a role model and represent the FBI positively to others. It can be contrasted with behavior that involves breaking the law and deviating from agency policy.

See Manual of Administrative Operations and Procedures ("MAOP"), Part I, Section 21-11.1.

only when they are engaged in their official duties but while off duty." See also Ludlum v. Dep't of Justice, 87 M.S.P.R. 56, ¶ 29 (2000), aff'd, 278 F.3d 1280 (Fed. Cir. 2002) (the FBI has a right to hold its special agents to a high standard of conduct). It was this theory that the Board adopted in its December 4, 2007 decision when it sustained the FBI's removal action. See Doe v. Dep't of Justice, CH-0752-04-0620-B-1 (holding that "clearly dishonest" conduct is sufficient to trigger investigation and ultimately justify a decision to remove a special agent).

We think that the Board's decision cannot be sustained and that a remand is required for two separate reasons. First, the Board has failed to articulate a meaningful standard as to when private dishonesty rises to the level of misconduct that adversely affects the "efficiency of the service." Using only "clearly dishonest" as a standard inevitably risks arbitrary results, as the question of removal would turn on the Board's subjective moral compass. Grounding disciplinary decisions in the nebulous field of comparative morality is too easily used as a post hoc justification. The articulation of a meaningful standard is necessary particularly in light of the apparent conflict between the FBI's policy on investigating personal relationships and its policies requiring their agents to act with "[i]ntegrity and [h]onesty." Compare Memorandum from Louis Freeh to All Employees (March 27, 2001) with MAOP, Part I, Section 21-11.1.

This court recognizes the difficulty in drawing a line between the types of conduct that can justify investigation, discipline, and the penalty of removal and those that cannot. Indeed, at oral argument neither party was able to define a meaningful standard. This conundrum does not justify the Board's failure to articulate a meaningful standard. Elsewhere we have acknowledged that misconduct that is private in nature

and that does not implicate job performance in any direct and obvious way is often insufficient to justify removal from a civil service position. See Brown v. Dep't of the Navy, 229 F.3d 1356, 1360 (Fed. Cir. 2000); Bonet v. U.S. Postal Serv., 661 F.2d 1071, 1078 (5th Cir. 1981) (it is insufficient for an agency to rely on internal regulations that proscribe in general certain employee conduct, e.g., "immoral" or "disgraceful," as proof of the required nexus between off-duty dishonesty/immorality and the efficiency of the service).

Without a predetermined standard—e.g., the legality of the conduct—to clarify when the agency may and may not investigate the personal relationships of its employees, it is conceivable that employees could be removed for any number of "clearly dishonest" misrepresentations, from those made to preserve the sanctity of a romantic relationship to cheating in a Friday night poker game. The danger here is twofold; federal employees are not on notice as to what off-duty behavior is subject to investigation and the government could use this overly broad standard to legitimize removals made for personal or political reasons. A clear articulation of a standard is therefore essential to the government's ability to reasonably and legitimately remove an agent for off-duty conduct relating to personal relationships. See, e.g., Doe v. Hampton, 566 F.2d 265, 272 n.20, 273 (D.C. Cir. 1977) (particularized requirements for removal serve to "minimize unjustified governmental intrusions into the private activities of federal employees" and have become a "leitmotif throughout federal personnel administration" to delimit employment concerns).[2]

---

[2] Courts have long recognized that, at a minimum, the government is bound to accord due process and set basic substantive limits on its prerogative to remove its employees. See, e.g., Norton v. Macy, 417 F.2d 1161, 1164 (D.C. Cir. 1969) ("The Due

To allow the Board decision to stand would be to recognize a presumed or per se nexus between the conduct and the efficiency of the service. We cannot endorse such an interpretation here, as we agree with the Board that the required nexus is not one that can be presumed based on Doe's conduct "speaking for itself." See, e.g., Allred v. Dep't of Health & Human Servs., 786 F.2d 1128, 1130 (Fed. Cir. 1986) (a presumption of the nexus arises when the misconduct is so egregious that it "speaks for itself," which "places an extraordinary burden on an employee, for it forces him to prove the negative proposition that his retention would not adversely affect the efficiency of the service") (quoting Crofoot v. U.S. Gov't Printing Office, 761 F.2d 661, 664 (Fed. Cir. 1985)). The case is remanded so that the Board may articulate a meaningful standard as to when private misconduct that is not criminal rises to the level of misconduct that adversely affects the efficiency of the service, and apply that standard to the facts of this case.

Secondly, we think that the Board has failed to address the fact that the FBI's decisions to sustain the charge and to impose the penalty of removal were influenced at least in part by the assumed criminality of the behavior. It remains unclear to this court whether the deciding officials at the FBI interpreted its policy to require a criminal finding, such that they could only investigate Doe if his surreptitious videotaping of his sexual liaisons was criminal. The record indicates that the deciding officials at OPR as well as Doe's own supervisors were under the impression that Doe's conduct violated state voyeurism laws, and was reasonably subject to criminal prosecution. On appeal, the AJ held that Doe's conduct likely did not violate the Ohio state voyeurism law,

Process Clause may also cut deeper into the government's discretion where a dismissal involves an intrusion upon that ill-defined area of privacy which is increasingly if indistinctly recognized as a foundation of several specific constitutional protections.").

because Doe had not shown the videotapes to any other person and the females who had been taped waived their right to privacy with respect to Doe. See State v. Frost, 634 N.E.2d 272, 272 (Ohio Ct. App. 1994) (holding no violation of Ohio state voyeurism statute when the privacy interest to be protected had been waived by the females who "probably expected to be observed").

Yet, while the Board agreed with the AJ's conclusion that Doe's conduct was not criminal, it failed to examine what role that impression played in the initial decision by the agency to remove Doe based on "clearly dishonest" conduct proscribed by the FBI policy. Because the Board sustained the agency's decision without regard to the violation of law issue, it did not consider whether the FBI would have disciplined Doe absent assumed criminality.

The dissent suggests that it is irrelevant that in imposing discipline the FBI may have been improperly influenced by the assumed criminality of petitioner's conduct, relying on cases holding that the Board reviews the agency's decision de novo. The dissent correctly points out that, in the Board context, agency fact finding is subject to de novo review by the Board. Thus, in the cases relied on by the dissent, the Board (or arbitrator) was required to determine de novo whether the agency acted in bad faith (Fucik v. United States, 655 F.2d 1089 (Cl. Ct. 1981)); whether the employee had engaged in sexual harassment (Jackson v. Veterans Admin., 768 F.2d 1325 (Fed. Cir. 1985)); whether the employee was disabled (Licausi v. Office of Pers. Mgmt., 350 F.3d 1359 (Fed. Cir. 2003)). So too, the Board must determine whether the agency exceeded its authority in determining that the employee's action would adversely affect the efficiency of the service. Brook v. Corrado, 999 F.2d 523, 526 (Fed. Cir. 1993).

None of those cases involved a situation where the agency had discretion to impose or not to impose discipline, and the agency had imposed discipline under a mistaken view of the applicable law. As we concluded in Fucik, "we believe an agency does have a certain amount of discretion in choosing between two courses of action, one which would involve adverse action procedures and one which would not." 655 F.2d at 1097. Under such circumstances the Board's task is not to make the discretionary decision as to whether discipline is desirable but to determine the facts; assess whether the agency had the authority to impose discipline; and determine whether discipline would have been imposed absent the legal error. As the dissent concedes, in the penalty area the Board must conduct just such an inquiry before sustaining the agency's penalty where the Board sets aside some of the charges on which the penalty is based. Dissent at 2. There is no reason to apply a different approach to the basic question of discipline.

In this case there is no factual dispute and, as described above, we leave it to the Board in the first instance to determine whether the FBI would have authority to discipline Doe for his actions. But even if the FBI could impose discipline, the Board must determine whether the agency would have imposed discipline absent the legal error, i.e., whether the FBI would impose discipline now that the FBI's legal error (the assumed criminality) has been corrected.

The record indicates that Doe's supervisor and the deciding official lost confidence in Doe's honesty and integrity, questioned his judgment and ability to perform his duties, and found Doe's misconduct serious because they believed it violated Ohio state law. Because it seems probable that Doe was disciplined at least in

part because the deciding official mistakenly believed that his misconduct was in violation of the law, it is necessary to know what conclusion the decision makers would have reached, and what penalty they would have imposed, if the possibility that the conduct was criminal was removed from consideration. See Hayes, 727 F.2d at 1539 ("it is not our duty to find nexus but rather to decide . . . whether the [MSPB] affirmance of the agency conclusion on the nexus issue meets the statutory criteria for our affirmance."); see also Lachance v. Devall, 178 F.3d 1246 (Fed. Cir. 1999) (where there are several charges leading to a penalty, and not all the charges are sustained, it is necessary to consider what penalty would have been appropriate in light of the dropped charges).

In the absence of a violation of criminal law, the FBI is permitted to discipline an employee for off-duty personal conduct only if the conduct impacts the agency's ability to perform its responsibilities or if the conduct constitutes a violation of an internal regulation. In addition to the remand described above (requiring the Board to articulate and apply a meaningful standard), the case is remanded to the Board to consider whether the agency (1) rendered its decision based on a determination that Doe's conduct satisfied either of those two prongs; and thereafter (2) would have imposed the penalty of removal as an appropriate disciplinary measure, independent of any determination that a violation of criminal law had occurred.

## III.   CONCLUSION

For the aforementioned reasons, we vacate both the efficiency determination as well as the penalty determination and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2008-3139

JOHN DOE,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of the Merit Systems Protection Board in CH0752040620-B-1.

BRYSON, <u>Circuit Judge</u>, dissenting.

In my view, the Board's finding of a nexus between the charged conduct and the efficiency of the service is not supported by substantial evidence. That should end the case. The majority, however, remands for further proceedings, in particular for the Board to examine (1) whether the FBI's decision to remove Mr. Doe was affected by its belief that his conduct was criminal, and (2) whether the FBI removed Mr. Doe either because his off-duty conduct impacted the agency's ability to perform its responsibilities or because the conduct constituted a violation of an internal regulation.

The Board is required to decide whether there is a nexus between the charged misconduct and the efficiency of the service. The Board makes that determination de novo. We review that determination, not the decision of the employing agency. It is therefore irrelevant what motivated the agency to conclude that there was a nexus between Mr. Doe's conduct and the efficiency of the service. For that reason, the

court's remand is both unnecessary and at odds with the proper roles of the employing agency, the Board, and this court in the review of agency disciplinary actions.

The court's error may stem from conflating the nexus and penalty issues. This court has held that when the basis for the agency's penalty is undermined, such as by the reversal of the most serious charges against the employee, the Board must consider whether there is evidence that the agency would have selected a lesser penalty if it had known that those more serious charges could not be considered in the penalty determination. See Lachance v. Devall, 178 F.3d 1246 (Fed. Cir. 1999). The reason for that rule is that the Board reviews the penalty selected by the agency under an abuse of discretion standard. See Beard v. Gen. Servs. Admin., 801 F.2d 1318, 1322 (Fed. Cir. 1986). The nexus inquiry, however, is different.

Under chapter 75 of title 5, an agency may take certain disciplinary actions against an employee, such as removal or a suspension for more than 14 days, only "for such cause as will promote the efficiency of the service." 5 U.S.C. §§ 7513(a), 7512. When an agency takes an action covered by section 7512, the employee may appeal to the Merit Systems Protection Board. Id. § 7513(d). The action before the Board is not a typical form of review of agency action, such as the "substantial evidence" review of agency action under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706. Rather, the action before the Board is a de novo proceeding in which the employee is entitled to a full adversary hearing on the record. 5 U.S.C. § 7701(a); Licausi v. Office of Pers. Mgmt., 350 F.3d 1359, 1364 n.2 (Fed. Cir. 2003) ("On an appeal from such an adverse agency action, the Board reviews de novo whether the agency's decision was justified."); Brook v. Corrado, 999 F.2d 523, 528 (Fed. Cir. 1993) (same); Jackson v.

Veterans Admin., 768 F.2d 1325, 1329 (Fed. Cir. 1985) (same); Fucik v. United States, 655 F.2d 1089, 1097 (Ct. Cl. 1981) ("It is the board's obligation to consider the cases before it de novo without regard to any decision by the agencies that have gone before it.").

The pertinent statute and regulation provide that in such a Board proceeding the employing agency bears the burden of proof by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.56(a)(1)(ii). The employing agency must demonstrate to the satisfaction of the Board both that the charged conduct was committed and that there is a nexus between the charged conduct and the efficiency of the service. "By seeking 'review,' an employee puts the agency in the position of a plaintiff bearing the burden of first coming forward with evidence to establish the fact of misconduct, the burden of proof, and the ultimate burden of persuasion, with respect to the basis for the charge or charges." Jackson, 768 F.2d at 1329.

This court has made clear that the employing agency must prove not only the charged conduct but also the requisite nexus by a preponderance of the evidence. See Brown v. Dep't of the Navy, 229 F.3d 1356, 1363 (Fed. Cir. 2000) ("The task of the Board is to decide whether the agency met the burden of proving a nexus by a preponderance of the evidence."); Corrado, 999 F.2d at 527 ("[T]he Government showed by a preponderance of the evidence the connection between Mr. Corrado's misconduct and his removal to promote NASA's efficiency."); Brown v. Dep't of Transp., 735 F.2d 543, 548 (Fed. Cir. 1984) ("This 'nexus' limitation requires the agency to show by a preponderance of the evidence the necessary connection (i.e., promotion of the efficiency of the service) between the employee's offending conduct (off-duty in this

case) and the employee's job-related responsibilities."). A finding by the Board that the nexus element has been proved must be based on evidence presented to the Board; like the Board's finding as to whether the misconduct has been proved, the Board's finding on nexus is not based on whether sufficient evidence was available to, or considered by, the employing agency at the time of the adverse agency action.[1] In the event the Board finds that the agency has proved the charged misconduct and established a nexus between the misconduct and the efficiency of the service, this court reviews the Board's findings under the substantial evidence standard. 5 U.S.C. § 7703.

The majority opinion recognizes these general principles, but in the course of selecting a remedy in this case, it abandons them. With respect to the nexus issue, the majority states that the employing agency's decision was "influenced at least in part by the assumed criminality" of Mr. Doe's conduct. The majority then concludes that the Board improperly sustained the agency's decision because "it did not consider whether the FBI would have disciplined Doe absent assumed criminality." Based on the evidence that the employing agency believed Mr. Doe's conduct violated Ohio law, the majority remands the case to the Board to consider whether the agency rendered its decision based on a determination that Mr. Doe's conduct impacted the agency's ability to perform its responsibilities or that the conduct violated an internal regulation.

---

[1] In some instances, involving egregious misconduct, the proof of nexus is presumed, subject to rebuttal by the employee. See Dominguez v. Dep't of the Air Force, 803 F.2d 680, 682 (Fed. Cir. 1986) ("A nexus between the conduct and the efficiency of the service may be established by a preponderance of specific evidence or by a rebuttable presumption where the conduct is so egregious that it 'speaks for itself.'"); Graybill v. U.S. Postal Serv., 782 F.2d 1567 (Fed. Cir. 1986). It is undisputed that this case does not involve egregious misconduct that would trigger the presumption of nexus; in this case, therefore, the agency bore the burden of proving nexus before the Board by a preponderance of the evidence.

As the majority notes, the Board's role with respect to nexus is to "assess whether the agency had the authority to impose discipline" for the employee's behavior. That determination must be made de novo based on evidence before the Board. The question whether the employing agency may have been influenced in its judgment as to nexus by its belief that Mr. Doe's conduct was criminal is irrelevant to the Board's decision on the nexus issue; the Board's task is not to review the agency's analysis of the nexus issue, but to determine whether the agency has proved nexus based on the evidence presented to the Board. The Board found that the nexus requirement was satisfied in this case, even though it clearly understood that the conduct in question was not criminal. If the Board had been laboring under the misapprehension that Mr. Doe's conduct was criminal, it would be reasonable to remand this case to the Board for a new determination as to nexus. But the Board was not mistaken on that issue, and thus there is no reason for a remand.

The majority states that it "leave[s] it to the Board in the first instance to determine whether the FBI would have authority to discipline Doe for his actions." Yet the Board has already answered that question in the affirmative. I would hold that the Board's ruling in that regard is in error and that the Board's decision as to nexus should be reversed. Because the agency, in the proceedings before the Board, failed to prove a nexus between the charged misconduct and the "efficiency of the service," there is no need to ascertain whether the agency's deciding officials would have found such a nexus if they had known that the conduct in question was not criminal. I therefore respectfully dissent from the court's decision to remand the case to the Board for further proceedings.