**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JERRY W. MURRAY, | DOCKET NUMBER |
| Appellant, | DA-0752-13-0407-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: January 22, 2015 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Andrea Goplerud</u>, Esquire, and <u>Jessica L. Parks</u>, Esquire, Washington, D.C., for the appellant.

<u>William J. Flynn</u>, Del Rio, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to supplement the administrative judge's nexus analysis, but we agree with the administrative judge's finding that there is a nexus between the sustained misconduct and the efficiency of the service. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      Effective May 17, 2013, the agency removed the appellant from his GS-11 Paralegal Specialist position in the Asset Forfeiture Office (AFO) of the U.S. Customs and Border Protection (CBP) based on the following two charges: (1) false report to the Val Verde Sheriff's Office; and (2) false insurance claim to GEICO insurance company. Initial Appeal File (IAF), Tab 1 at 7-10. The appellant appealed his removal to the Board and requested a hearing. *Id.* at 1-5. He admitted to the first charge but disputed the second charge and argued that the penalty of removal was unreasonable given certain mitigating factors, the deciding official failed to properly weigh the relevant factors, and the agency treated him disparately compared to other employees who engaged in similar misconduct. IAF, Tab 14 at 17-34, Tab 16 at 1, Tab 40, Initial Decision (ID) at 6 n.4. He also raised the affirmative defenses of race discrimination, lack of due

process, and harmful procedural error. IAF, Tab 1 at 3, Tab 14 at 31, 34; *see* IAF, Tab 16, Tab 24; ID at 8-9. The appellant withdrew his request for a hearing and the parties presented closing arguments over the telephone. IAF, Tabs 27, 39.

¶3 The administrative judge issued an initial decision affirming the removal action. ID at 1, 19. He sustained both charges, found a nexus between the sustained misconduct and the efficiency of the service, and determined that the penalty was within the bounds of reasonableness. ID at 2-6, 12-19. The administrative judge additionally found that the appellant failed to prove his affirmative defenses. ID at 6-12.

¶4 The appellant has filed a petition for review and primarily challenges the administrative judge's findings regarding nexus and the reasonableness of the removal penalty, including his claim of disparate penalties. Petition for Review (PFR) File, Tab 4 at 4, 9-27. The agency has responded in opposition. PFR File, Tab 5. The appellant has filed a reply to the agency's response. PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency proved the charged misconduct and the existence of a nexus between the misconduct and the efficiency of the service.</u>

¶5 The appellant does not contest in his petition for review the administrative judge's finding that the agency proved both charges of misconduct. PFR File, Tab 4 at 9. However, he argues that the agency failed to prove a nexus between the sustained misconduct and the efficiency of the service. *Id.* at 9-15; PFR File, Tab 6 at 5-9. We modify the initial decision to discuss the proper standard for evaluating nexus when off-duty misconduct is involved and to supplement the administrative judge's nexus analysis.

¶6 The nexus requirement, for purposes of determining whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his duties satisfactorily or

some other legitimate government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified on other grounds by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n. 2 (1987). An agency may show a nexus between off-duty misconduct and the efficiency of the service by three means: (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *See Kruger*, 32 M.S.P.R. at 74.

¶7      The agency argues that it established a nexus under the second *Kruger* category because the appellant's misconduct "undermined the Agency's trust and confidence in the Appellant's ability to successfully perform his work as a paralegal." PFR File, Tab 5 at 10. In the decision letter, the deciding official stated, "I have lost confidence in your integrity and ability to perform the duties of your position, or those of any other position, within this Agency." IAF, Tab 1 at 8. He also stated in a declaration made under penalty of perjury that the appellant's "dishonest behavior negatively impacted [his] ability to effectively perform his duties on the government's behalf" and "his lack of mature judgment and misconduct undermined my confidence in his ability to carry out the duties and responsibilities of his position." IAF, Tab 37 at 11. The deciding official testified during his deposition that the agency "cannot have one of [its] employees lying to a member of law enforcement," IAF, Tab 30 at 71-72, and that the appellant violated "the confidence of the public," *id.* at 35-36.[2]

---

[2] Management's loss of trust and confidence under the second *Kruger* category must be related to the employee's job performance. *See Doe v. Department of Justice*, 565 F.3d 1375, 1377-83 (Fed. Cir. 2009) (finding the Board's nexus analysis inadequate and remanding the case for more specific findings demonstrating the off-duty misconduct of the appellant and the impact of that conduct on his ability to perform his job or the mission of the agency); *Brown v. Department of the Navy*, 229 F.3d 1356, 1360-61 (Fed. Cir. 2000) (finding management's trust and confidence in the appellant was undermined where he initiated an adulterous affair with the wife of a deployed Marine

¶8    The appellant disputes the agency's characterization of the nature of his job duties and claims that his duties were "essentially ministerial in nature."  PFR File, Tab 6 at 8.  The appellant further contends that "he had no actual role in determining whether a vehicle was stolen other than giving stolen vehicle reports to [his supervisor] and making sure the reports were in the file."  *Id.*  The appellant also asserted that he did not deal with stolen vehicle reports.  IAF, Tab 34 at 13 (affidavit); *see* IAF, Tab 18 at 110 (interview with the agency's fact finder).  To support his position, the appellant relies on the testimony of his former assistant.  PFR File, Tab 4 at 6, 12, 15, Tab 6 at 7; *see* IAF, Tab 35 at 5-6.  She testified that she did not recall a time when the appellant obtained a stolen vehicle report by contacting a law enforcement agency.  IAF, Tab 28 at 13-14.  However, it is unclear whether the former assistant's deposition testimony addresses her previous duties as a Paralegal Assistant or her current duties as a

who was a member of a unit that he was directly responsible for supporting, thus implicating his managerial responsibilities on the unit); *Royster v. Department of Justice*, 58 M.S.P.R. 495, 500 (1993) (finding that the agency established by preponderant evidence that the appellant's misconduct adversely affected its trust and confidence in the appellant's ability to perform his duties where the sustained misconduct involved making a threat of violence to a woman, thus relating to the appellant's duties of maintaining the safety, custody, and control of female inmates). Grounding disciplinary actions on such a nebulous standard as loss of trust alone, however, is contrary to the theory of the Civil Service Reform Act that disciplinary actions may be taken only in the efficiency of the service. *Norton v. Macy*, 417 F.2d 1161, 1165-67 (D.C. Cir. 1969) ("[a] reviewing court must at least be able to discern some reasonably foreseeable, specific connection between an employee's potentially embarrassing conduct and the efficiency of the service"); *see Doe*, 565 F.3d at 1380 (using only "clearly dishonest" as a standard for nexus risked arbitrary results, "as the question of removal would turn on the Board's subjective moral compass"). Accordingly, a deciding official's statement that he has lost confidence in an appellant's ability to perform the duties of his position or of any other position within the agency, absent evidence or argument showing how his loss of confidence in the appellant is related to the appellant's job performance, is insufficient to establish nexus under the second *Kruger* category.  We need not reach the issue of whether the agency in this case established nexus under the second *Kruger* category because, as discussed below, the record reflects that it established nexus under the third *Kruger* category.

Paralegal Specialist, as claimed by the appellant. *Id.* at 4-19; *see* IAF, Tab 35 at 5-6; PFR File, Tab 4 at 12, Tab 6 at 7.

¶9    In contrast, the appellant's first-line supervisor has consistently stated that determining the validity of stolen vehicle reports was one of the appellant's primary duties and it involved contacting law enforcement agencies and collecting stolen vehicle reports. IAF, Tab 10 at 19 (written memorandum), Tab 18 at 103 (interview with the agency's fact finder), Tab 29 at 22-23, 26-27, 29, 32 (deposition testimony), Tab 35 at 5-6 (declaration). The position description for a GS-11 Paralegal Specialist position is consistent with the agency's contention that the appellant dealt with stolen vehicle reports. IAF, Tab 11 at 4 ("Develops and evaluates all evidence, facts and circumstances relating to the case . . . ."). The deciding official also relied on the position description to determine the appellant's duties, IAF, Tab 30 at 17 (deposition testimony), which he believed involved stolen vehicle claims, *id.* at 72, Tab 37 at 10 (declaration).

¶10    The appellant's allegation that he did not deal with stolen vehicle reports conflicts with the position description and the opinions of both the deciding official and the appellant's first-line supervisor. However, we need not make credibility determinations because, even assuming the appellant did not deal with stolen vehicle reports as part of his primary duties, we find that the nature of the work accomplished in the AFO is so related to the appellant's misconduct that it establishes a nexus under the third *Kruger* category. *See, e.g.*, *Kruger*, 32 M.S.P.R. at 76 (holding that the appellants' use of marijuana was antithetical to the agency's law enforcement and rehabilitative programs that they were responsible for monitoring). The purpose of the AFO is to process seized items, such as vehicles, for administrative forfeiture. IAF, Tab 35 at 4. Sometimes, the seized vehicles are reported as stolen and the office must investigate the validity of the stolen vehicle reports. *Id.* at 5. Additionally, the office is small and only has five employees. *Id.* The office processed 313 seized vehicles during fiscal year 2013, and 309 seized vehicles in fiscal year 2012. IAF, Tab 37 at 5. Thus,

the appellant's conduct in intentionally filing a false stolen vehicle report with the police and the insurance company is antithetical to the office's mission of conducting administrative forfeiture in part by determining the validity of stolen vehicle reports. *See Kruger*, 32 M.S.P.R. at 75-76.

¶11    Therefore, we agree with the administrative judge's implicit finding that the agency established a nexus between the appellant's misconduct and the efficiency of the service. ID at 19.

The deciding official properly weighed the relevant *Douglas* factors and the penalty of removal was within the tolerable limits of reasonableness.

¶12    In his petition for review, the appellant argues that the deciding official misapplied the *Douglas* factors[3] and the penalty of removal is excessive under the circumstances. Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant *Douglas* factors and exercised management discretion within tolerable limits of reasonableness. *Portner v. Department of Justice*, 119 M.S.P.R. 365, ¶ 10 (2013). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.* However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

¶13    The administrative judge determined that the deciding official's penalty determination was entitled to deference. ID at 14, 19. The administrative judge found, based on the deciding official's decision letter, testimony, and declaration,

---

[3] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of 12 factors that are relevant in assessing the penalty to be imposed for an act of misconduct.

that he considered the relevant *Douglas* factors. IAF, Tab 1 at 7-10, Tab 30 at 19-20, 92, Tab 37 at 10-11. Specifically, the deciding official considered that the appellant's duties involved access to stolen vehicle reports and that he had contact with law enforcement agencies. IAF, Tab 37 at 10. The deciding official further explained that the appellant had no rehabilitation potential. IAF, Tab 1 at 8, Tab 37 at 11. The deciding official also noted that the penalty was consistent with CBP's Table of Penalties. IAF, Tab 30 at 64-65, Tab 37 at 11. He considered, as mitigating factors, that the appellant had over 5 years of service with good performance ratings and no prior disciplinary history, but concluded that these factors were outweighed by the seriousness of the misconduct. IAF, Tab 1 at 8, Tab 37 at 11.

¶14      The appellant argues on review that the deciding official failed to consider other mitigating factors such as the appellant's remorse or rehabilitation potential. PFR File, Tab 4 at 10, 22-24, Tab 6 at 10-11. The appellant cites *Raco v. Social Security Administration*, 117 M.S.P.R. 1, ¶ 16 (2011), as support for his argument that the fact that he alleged that his first-line supervisor told him to report his vehicle as stolen does not demonstrate lack of remorse. PFR File, Tab 4 at 24. The appellant's case is distinguishable from *Raco* because the deciding official here recognized the appellant's remorse, whereas the agency in *Raco* argued that the employee was not remorseful. *See Raco*, 117 M.S.P.R. 1, ¶ 16. Specifically, the deciding official stated in the decision letter that the appellant "eventually accepted responsibility for [his] actions," IAF, Tab 1 at 8, and noted in his declaration that the appellant "apologized for his actions," IAF, Tab 37 at 11. The appellant also argues that his more than 2 years of employment in the Logistics Department following his misconduct demonstrates his rehabilitation potential. PFR File, Tab 4 at 22, Tab 6 at 11. However, the appellant's duties in the Logistics Department were inconsistent with his duties as a Paralegal Specialist, and the deciding official stated that permanent reassignment was not feasible. *See* IAF, Tab 37 at 11 ("Reassigning [the appellant] to Logistics or

another department is not feasible as the AFO is the only unit in the Sector that has a Paralegal Specialist."). Therefore, the appellant's continued employment in the Logistics Department does not show that he could be rehabilitated to his Paralegal Specialist position.

¶15 The appellant further alleges that the deciding official improperly held the appellant to a higher standard of conduct because he worked for a law enforcement agency. PFR File, Tab 4 at 16-18, Tab 6 at 9-10. In the decision letter, the deciding official stated, "Integrity is one of CBP's Core values and as an Agency with law enforcement functions, it is imperative that all employees demonstrate high standards of integrity." IAF, Tab 1 at 7. The deciding official's statement is supported by CBP's Standards of Conduct. IAF, Tab 10 at 177-87. The agency imposes this high standard of integrity on all CBP employees, not just supervisors and law enforcement officers. *Id.* at 177-78. The appellant further argues that the deciding official improperly considered as an aggravating factor the possibility that the appellant's ability to testify in trials would be impaired. PFR File, Tab 4 at 13-14, 18. We agree that the deciding official erred by suggesting that the appellant may "be called upon to testify in court proceedings" when in fact the appellant would not have an opportunity to testify in criminal cases. IAF, Tab 1 at 7. However, the deciding official's error is immaterial to the outcome of the case because the penalty is supported by the deciding official's consideration of the relevant factors and is within the bounds of reasonableness. The appellant also alleges that the deciding official and administrative judge improperly compared the appellant to supervisors and law enforcement officers. PFR File, Tab 4 at 16-18, Tab 6 at 9-10. However, the deciding official and administrative judge compared the appellant to such employees to demonstrate their similar misconduct, not to hold the appellant to the higher standard of a supervisor or a law enforcement officer. *See* IAF, Tab 30 at 61-63; ID at 14-15. Thus, the deciding official properly determined that the

nature of the appellant's misconduct was serious given the actual duties of his position and did not hold him to a higher standard of conduct.

¶16     Finally, the appellant argues that the deciding official applied an automatic penalty of removal for falsification and did not consider any alternative penalties. PFR File, Tab 4 at 16, 18-21, Tab 6 at 10.  We disagree.  The deciding official did not automatically apply the removal penalty, but instead properly considered the relevant *Douglas* factors.  IAF, Tab 1 at 7-8, Tab 30 at 92, Tab 37 at 10-11.  The deciding official discussed previous cases where he removed employees for dishonest conduct to demonstrate the consistency of the penalty for similar misconduct.[4]  IAF, Tab 30 at 61-63, 92-93.  We also find that the deciding official properly considered alternative sanctions.  *See id.* at 92-93.  The appellant further argues that the agency misapplied the Table of Penalties, PFR File, Tab 4 at 18-19, 21, however, we find that the agency properly considered the range of penalties stated in the Table of Penalties in deciding to remove the appellant, *see* IAF, Tab 30 at 64-65, 92-93.  Furthermore, the penalty of removal is within the range of appropriate penalties for falsification.  IAF, Tab 10 at 167-68.  Therefore, the deciding official did not impose a default penalty of removal for falsification.

¶17     Under the circumstances of this case, we find that the deciding official considered the relevant *Douglas* factors, and the penalty of removal did not exceed the tolerable limits of reasonableness.

### The appellant's proffered comparators were not similarly situated and his disparate penalties claim lacks merit.

¶18     The appellant argues on review that the administrative judge improperly concluded that the appellant's proffered comparators were not similarly situated to the appellant.  PFR File, Tab 4 at 24-27, Tab 6 at 11-12.  With regard to putative comparators, there must be "enough similarity between both the nature of

---

[4] The appellant's argument regarding his disparate penalties claim is discussed later in this Final Order.

the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently, but the Board will not have hard and fast rules regarding the 'outcome determinative' nature of these factors." *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012) (quoting *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010)). An appellant's initial showing of disparate penalties triggers an agency's burden to prove a legitimate reason for the difference in treatment between the appellant and other employees. *Boucher*, 118 M.S.P.R. 640, ¶ 24.

¶19    The appellant submitted evidence of three alleged comparators. IAF, Tab 14 at 58-79. In the first case, a Border Patrol Agent was suspended for 45 days for four charges of misuse of his position as a law enforcement officer, misuse of his service-issued collapsible baton, failure to provide truthful information, and unauthorized outside employment. *Id.* at 74-79. However, the alleged comparator is not valid because his proposed removal was reduced as part of a settlement agreement. *Id.* at 78-79; *see Portner*, 119 M.S.P.R. 365, ¶ 20 n.4 (the Board has held that, where another employee receives a lesser penalty, despite apparent similarities in circumstances, as a result of a settlement agreement, the agency will not be required to explain the difference in treatment).

¶20    In the second case, an Automotive Mechanic was suspended for 15 days for failure to be forthright and using personally-owned containers to transport gasoline owned by the U.S. Government. IAF, Tab 14 at 58-64. The failure to be forthright charge was based on the employee's conflicting statements made during interviews with the agency's investigators and his written response. *Id.* at 61. The deciding official in the Automotive Mechanic case considered several mitigating factors, including the employee's more than 13 years of service, lack of prior discipline, and potential for rehabilitation. *Id.* at 62. In contrast, the appellant had less than 6 years of service and the deciding official felt that the appellant had no potential for rehabilitation. IAF, Tab 1 at 8. Additionally, the appellant's dishonesty was more serious because he made false claims with an

intent to deceive both a law enforcement agency and an insurance company, *id.* at 7-8, 18; ID at 2-6, whereas the employee in this case was not forthright in his responses, IAF, Tab 14 at 61-62. Therefore, we find that the employee was not similarly situated.

¶21    In the third case, a CBP Officer was suspended for 3 days for one sustained charge of misrepresenting information on his time and attendance record. IAF, Tab 14 at 66-72. The employee was scheduled for military leave on a particular day, but he was later excused from attending training because he felt unwell. *Id.* at 70-71. The charge was based on the employee's failure to request approved leave when the basis for the prior authorization of military leave was cancelled. *Id.* The employee's single instance of failing to change 1 day of military leave to another form of approved leave was much less serious than the appellant's intentional filing of a false police report and insurance claim. *See* IAF, Tab 1 at 7, 18; ID at 2-6. Thus, the employee in the CBP Officer case was not similarly situated to the appellant.

¶22    For these reasons, we conclude that the administrative judge properly found that the appellant's three proffered comparators were not similarly situated to the appellant. Accordingly, we discern no basis for disturbing the administrative judge's finding that the appellant's allegation of disparate penalties lacks merit.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.