**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TIMOTHY C. KNIGHT,
      Appellant,

     v.

DEPARTMENT OF AGRICULTURE,
      Agency.

DOCKET NUMBER
SF-0752-15-0309-I-1

DATE: April 27, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bobby R. Devadoss and Stephanie Bernstein, Esquire, Dallas, Texas, for
    the appellant.

Kerri E. Bandics, Esquire, San Francisco, California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the appellant's 30-day suspension. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. However, we MODIFY the initial decision as stated in ¶¶ 21-27 below as to the administrative judge's analysis of the appellant's whistleblower defense. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

¶2 At all relevant times, the appellant was a GS-12 District Ranger for the agency. Initial Appeal File (IAF), Tab 9 at 31, Tab 11 at 4. This is a supervisory and managerial position whose duties involve working with a team to administer an area of National Forest land. IAF, Tab 11 at 28-33. On November 6, 2012, the agency proposed the appellant's removal based on one charge of "off-duty misconduct" (five specifications) and one charge of "inappropriate use of government resources" (four specifications). The charges stemmed from six inappropriate emails and one inappropriate text message that the appellant sent to a coworker with whom he had had a sexual relationship, as well as one inappropriate email that the appellant accidentally sent to another coworker. IAF, Tab 10 at 67-69. After the appellant responded, the deciding official issued a decision sustaining the charges, but mitigating the penalty to a 30-day suspension. IAF, Tab 9 at 32-43.

¶3 The appellant filed a formal equal employment opportunity (EEO) complaint, alleging among other things that his suspension was in reprisal for prior EEO activity. IAF, Tab 1 at 11-12. When the agency returned a finding of

no discrimination, the appellant filed a Board appeal. IAF, Tab 1. He waived his right to a hearing. IAF, Tab 27. After the close of the record, the administrative judge issued an initial decision affirming the suspension. IAF, Tab 33, Initial Decision (ID) at 1, 21. She sustained both charges and all but one of the specifications and found that the agency established a nexus between the appellant's misconduct and the efficiency of the service. ID at 4-11. The administrative judge also considered the appellant's affirmative defenses of due process violation, reprisal for EEO activity, and whistleblower retaliation, but she found that the appellant failed to prove them. ID at 11-18. Finally, the administrative judge found that the deciding official considered the pertinent penalty factors and that the 30-day suspension did not exceed the tolerable limits of reasonableness. ID at 18-21.

¶4    The appellant has filed a petition for review, disputing many of the administrative judge's factual findings, particularly regarding her penalty analysis. Petition for Review (PFR) File, Tab 1 at 1-21. He also argues that he is aware of new and material evidence about similarly situated employees that the agency withheld during discovery. *Id*. at 22-23. The agency has filed a response. PFR File, Tab 3.

The appellant's discovery dispute is not properly before the Board.

¶5    On review, the appellant alleges that the agency withheld evidence that would have undermined the credibility of one of its witness's written statements. PFR File, Tab 1 at 6. He also alleges that the agency was aware of three similarly situated employees whom the agency treated less harshly, but it failed to provide information about these employees as requested during discovery. *Id*. at 11, 15, 22-23.

¶6    We find that appellant is essentially raising a discovery dispute for the first time on petition for review. The appellant's failure to file a motion to compel below precludes him from attempting to do so now. *See Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005), *aff'd*, 167 F. App'x 217

(Fed. Cir. 2006). Furthermore, although the appellant alleges that the comparator evidence is "new and material," he indicates that he was aware of this evidence before the record closed. PFR File, Tab 1 at 15, 22-23. Because the appellant was aware that this evidence existed and did not file a motion to compel, we find that it does not fit the definition of "new." *See* 5 C.F.R. § 1201.115(d) ("To constitute new evidence, the information . . . must have been unavailable despite due diligence when the record closed.").

The agency proved Charge 1.

¶7 The facts underlying the charges are largely undisputed and are set forth more fully in the initial decision. ID at 2-8. Briefly, and by way of background, the appellant and his coworker, C.B., a Budget Officer not normally in his chain of command, began a consensual sexual relationship in December 2012.[2] IAF, Tab 10 at 91, 107, 112, 121. They took a hiatus during March 2013, and then resumed their relationship in April. *Id*. at 91, 107-08, 114-18. On June 24, 2013, C.B. ended the relationship permanently. *Id*. at 91, 108, 119. On June 27 and 29, 2013, C.B. informed multiple agency officials that the appellant was engaging in stalking and harassing behavior, including sending her inappropriate emails and text messages, that she feared for her safety, and that for these reasons, she was stepping down from her temporary role as Forest Supervisor. *Id*. at 91-92, 105-06, 123-24.

¶8 On July 9, 2013, the agency launched an investigation into C.B.'s allegations. *Id*. at 89. During the investigation, the agency uncovered the text message and six of the emails at issue. *Id*. at 77-86, 96-97. The seventh email was sent after the investigation was concluded. *Id*. at 68-69, 87-88. As explained above, the administrative judge found that all of these communications except for

---

[2] During the period in question, the appellant and C.B. rotated on a monthly basis with other employees as acting Forest Supervisor. IAF, Tab 30 at 27. Whichever employee was acting at any given time served as immediate supervisor of the others in the rotation. *Id*.

one constituted actionable misconduct, and she therefore sustained both charges. ID at 4-11; *see Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that, where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

¶9    On review, the appellant appears to argue that the agency failed to prove Charge 1 because none of the communications at issue in that charge constituted actionable misconduct. PFR File, Tab 1 at 1-3. Because proof of Charge 1 and the issue of nexus are intertwined, we will address the appellant's arguments below. For the reasons discussed below and explained in the initial decision, we agree with the administrative judge that Charge 1, Specifications 1 through 4 constitute actionable misconduct and that the agency therefore proved its charge of "off-duty misconduct." *Infra* ¶¶ 14-19; ID at 4-6.

The agency proved Charge 2.

¶10    The administrative judge sustained Charge 2, "inappropriate use of government resources," finding that the four emails at issue originated from the appellant's Government account and violated two agency regulations concerning use of Government telecommunications resources. ID at 6-8. On review, the appellant argues that the administrative judge identified only two emails that he sent from his Government account, rather than four, as the administrative judge stated in her initial decision. PFR File, Tab 1 at 5. We disagree. The notice of proposed removal identified four inappropriate emails that originated from the appellant's Government account, IAF, Tab 10 at 68-69, 82-88, and the administrative judge discussed all four of them in her initial decision, ID at 7-8.

¶11    The appellant also disputes the administrative judge's finding that these emails violated the agency's use policy. PFR File, Tab 1 at 4-5. He argues that one of the agency regulations at issue only prohibits the use of "office equipment" for activities that would violate anti-discrimination statutes and that he did not use "office equipment" to send the emails at issue or use any

discriminatory language. *Id*. at 4; IAF, Tab 11 at 74. We disagree with the appellant's interpretation of this regulation. First, we find that "office equipment" under the regulation explicitly includes email. IAF, Tab 11 at 73. Second, although the appellant is correct that the examples listed of "illegal, inappropriate, or offensive activities" consist primarily of discriminatory speech, the list is explicitly nonexhaustive. *Id*. at 74. We therefore find that, on its face, the regulation also prohibits offensive speech that is not discriminatory. The appellant further argues that there is no evidence that anyone was actually offended by these emails. PFR File, Tab 1 at 5. The administrative judge, however, already addressed this contention, finding that the appellant himself admitted that the employee whom he called an "idiot" in one email was offended, and in any event, the regulation prohibits emails that are "inappropriate *or* offensive." ID at 7-8. We agree with the administrative judge. Furthermore, we find that an email does not actually have to offend anyone to be considered inherently offensive.

¶12    The appellant argues that the second agency regulation at issue only applies to employees "acting in an official capacity," and he was not acting in an official capacity when sending any of the emails listed under Charge 2. PFR File, Tab 1 at 4-5; IAF, Tab 11 at 44. We agree with the appellant's interpretation of this regulation, and we also agree that it is debatable whether he was acting in an "official capacity" when he sent some of the emails at issue. However, we find it indisputable that the appellant was acting in an official capacity when he sent the email discussed in Charge 2, Specification 3 pertaining to the processing of his time sheet. IAF, Tab 10 at 68, 85-86. In any event, because all of the emails were inappropriate and were prohibited by the other agency regulation as discussed above, we agree with the administrative judge that the agency proved its charge of "inappropriate use of government resources." ID at 10.

¶13    Finally, the appellant argues that the administrative judge found that the emails underlying Charge 2, Specifications 2 and 3 interfered with Government

business but that the agency did not charge him with interfering with Government business.  PFR File, Tab 1 at 5-6.  He further argues that he did not actually interfere with Government business, and he downplays the offensiveness of his emails.  *Id*. at 6.  We agree with the appellant that he was not charged with interfering with Government business.  However, regardless of whether the appellant's emails interfered with Government business, we find that the administrative judge properly sustained Charge 2 for the reasons discussed above.

The agency proved that the charged misconduct bore a nexus to the efficiency of the service.

¶14    An agency may take an adverse action under 5 U.S.C. chapter 75 "only for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  In this case, the emails and text message at issue in Charge 1 were sent from the appellant's personal accounts while he was off-duty, whereas the emails at issue in Charge 2 were sent from his Government account.[3]  IAF, Tab 10 at 67-69.  The administrative judge conducted separate nexus analyses for the two charges.  ID at 9-11.

¶15    Regarding Charge 1, the administrative judge correctly noted that an agency may establish nexus between off-duty misconduct and the efficiency of the service by:  (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission.  ID at 9; *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 74 (1987).  She found that the agency established nexus under the second method, i.e., by showing that the appellant's

---

[3] It is not clear whether the appellant was in duty status when he sent the emails underlying Charge 2, but we find that this information would be immaterial to the analysis.

misconduct adversely affected C.B.'s job performance as well as the agency's trust and confidence in him to perform his duties.  ID at 9-10.

¶16        On review, the appellant argues that the agency failed to prove nexus because his off-duty conduct was not criminal in nature and that a presumption of nexus only arises in cases of egregious criminal conduct.[4]  PFR File, Tab 1 at 3-4. To the extent that the appellant is arguing that noncriminal off-duty misconduct never bears a nexus to the efficiency of the service, we disagree.  The Board has found on multiple occasions that agencies established nexus between noncriminal, off-duty misconduct and the efficiency of the service.  *See Doe v. Department of Justice*, 113 M.S.P.R. 128, ¶¶ 20-21, 34 (2010).  Moreover, as explained above, the administrative judge in this case did not rely upon a presumption of nexus. Rather, she found that the emails and message that the appellant sent from his personal accounts adversely affected C.B.'s job performance, as well as management's trust and confidence in the appellant's ability to perform his job. ID at 10-11.

¶17        Regarding C.B.'s job performance, the appellant argues that the emails did not "greatly upset" her as the administrative judge found, that they did not affect her job performance, and that she did not actually stand down as acting Forest Supervisor.  PFR File, Tab 1 at 1-3, 6.  He further argues that C.B.'s statements in support of these allegations postdated the agency's suspension decision.  PFR File, Tab 1 at 6; IAF, Tab 30 at 26-30.  As an initial matter, we find it immaterial that C.B.'s statement postdates the agency's suspension decision.   It is well settled that the Board's review is not limited to the administrative record before the agency; rather, the Board is mandated by statute to consider de novo

---

[4] The appellant cites multiple circuit court decisions in support of his argument.  PFR File, Tab 1 at 3.  However, the only circuit court with controlling authority over the Board is the U.S. Court of Appeals for the Federal Circuit.  *Fairall v. Veterans Administration*, 33 M.S.P.R. 33, 39, *aff'd*, 844 F.2d 775 (Fed. Cir. 1987).  To the extent that these decisions from other circuits are contrary to our established precedent, we find them unpersuasive.

all the relevant evidence presented by both parties. *Zeiss v. Veterans Administration*, 8 M.S.P.R. 15, 17-18 (1981). As for whether the appellant's conduct "greatly" upset C.B., we find the administrative judge's choice of this adjective to be of little importance. We find that the nature of the communications underlying Charge 1 are such that a reasonable person could be upset by them, IAF, Tab 10 at 77-80, and the record shows that C.B. was, in fact, upset by them enough for her to alter her work arrangements by teleworking for a time, enlisting other employees to attend meetings and conduct budget-related business with the appellant in her stead, and modifying the ways in which she communicated with the appellant, IAF, Tab 30 at 30. As for whether C.B. actually stepped down as acting Forest Supervisor, the administrative judge did not so find, and we find that this is also immaterial to the nexus issue. It is undisputed that C.B. informed her supervisor that she wished to step down, thus demonstrating another way in which the appellant's off-duty misconduct affected the workplace. *Id*.

¶18        Regarding the agency's loss of trust and confidence in the appellant, the administrative judge found that the deciding official had a valid basis for concern about the appellant's ability to "control his emotions and communicate in a professional manner if one of his employees or a member of the public crosses him." ID at 10; IAF, Tab 30 at 24. The appellant argues that the administrative judge erred in finding that his "supervisors" lost trust and confidence in him because he has only one supervisor, and it is not the deciding official. PFR File, Tab 1 at 7; ID at 10. Even so, we find that this is immaterial because the deciding official's declaration is sufficient to demonstrate that agency management lost confidence in the appellant, which is all that is required for a showing of nexus. *See Kruge*, 32 M.S.P.R. at 74; *see also Batara v. Department of the Navy*, 123 M.S.P.R. 278, ¶ 7 (2016) (determining that a supervisor's opinions are insufficient to overcome the agency's judgment concerning the seriousness of the misconduct and the appropriateness of the agency-imposed

penalty).  The appellant also argues that his final performance evaluation for the period encompassing March through September 2013 belies the agency's supposed concerns about his ability to perform.  PFR File, Tab 1 at 7-8.  However, even if the agency's concerns about the appellant's ability to perform in the future have not borne out, we find that this does not undermine the legitimacy of those concerns.  Finally, the appellant argues that the administrative judge erred in finding that he was not subject to on-site supervision.  PFR File, Tab 1 at 7; ID at 10.  Although this may be true, we find that it does little to detract from the administrative judge's nexus analysis overall.  For the reasons explained in the initial decision, we agree with the administrative judge that the agency established a nexus between the off-duty misconduct underlying Charge 1 and the efficiency of the service.  ID at 9-10.

¶19     As to Charge 2, the administrative judge found the issue of nexus to be self-evident, and so do we.  ID at 10.

The appellant did not prove his affirmative defense of retaliation for equal employment opportunity activity.

¶20     The administrative judge found that the appellant failed to prove this affirmative defense because there was no evidence that either the proposing or deciding official was aware of his prior EEO activity.  ID at 12.  On review, the appellant argues that the proposing and deciding officials must have known about his EEO activity because of agency policy and their "statutory duty to know all of the complaints that were affiliated with their actions."  PFR File, Tab 1 at 8.  The appellant, however, has not identified the statutes or provided any evidence of these purported agency policies.  We find an inadequate basis to infer that these officials actually knew of the appellant's prior EEO activity contrary to their declarations.  IAF, Tab 30 at 22-23.  We therefore agree with the administrative judge that the appellant did not prove his affirmative defense of retalation for EEO activity.  ID at 11-12; *see Newberry v. U.S. Postal Service*, 49 M.S.P.R. 348, 354 (1991).

<u>The agency proved by clear and convincing evidence that it would have suspended the appellant notwithstanding his protected disclosure.</u>

¶21    The administrative judge found that the appellant made a protected disclosure in March 2013, when the appellant had "heated discussions" with the Forest Fire Management Officer and Deputy Forest Fire Management Officer (DFFMO) about firefighting tactics.  ID at 13-15; IAF, Tab 9 at 50, Tab 29 at 27.  Specifically, the appellant told these individuals that the "maximum suppression" tactic that the agency was considering was "extremely hazardous" to the safety of firefighters.  IAF, Tab 9 at 50, Tab 29 at 27.  The administrative judge found that this disclosure went beyond mere policy disagreement and concerned a matter that the appellant reasonably believed constituted a substantial and specific danger to public health and safety.  ID at 14-15.  The administrative judge also found that the deciding official became aware of the appellant's disclosure during his November 25, 2014 oral reply to the notice of proposed removal.  ID at 16; IAF, Tab 10 at 4.  Thus, the appellant established through the knowledge/timing test that his disclosure was a contributing factor in the suspension.  ID at 16; *see* 5 U.S.C. § 1221(e)(1).  Nevertheless, considering the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), the administrative judge found that the agency proved by clear and convincing evidence that it would have suspended the appellant notwithstanding his disclosure.  ID at 17-18.

¶22    In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr*, 185 F.3d at 1323.  On review, the appellant argues that the administrative

judge erred in finding that the agency's evidence in support of the suspension was strong. Specifically, he argues that the administrative judge erred in finding that his "supervisors" lost trust in his ability to perform. PFR File, Tab 1 at 10; ID at 17. We acknowledge that the proposing and deciding officials may not have been in the appellant's direct supervisory chain and that there is otherwise no evidence that anyone in his supervisory chain personally lost trust and confidence in him. However, as explained above, we find that the record is sufficient to establish that the proposing and deciding officials had legitimate misgivings about the appellant's ability to perform his duties appropriately in the future. *Supra* ¶ 18. Therefore, we find that the appellant's argument detracts very little from the administrative judge's findings on this issue.

¶23 Regarding the second *Carr* factor, the strength of retaliatory motive, the appellant argues that the administrative judge failed to consider that the deciding official was not the only one who was aware of his disclosure. The proposing official knew about it as well, as did the DFFMO, who also played a role in the agency's action. PFR File, Tab 1 at 8-9; IAF, Tab 26 at 221. We agree with the appellant that these individuals were aware of his disclosure and that they were both involved in his suspension—the proposing official in proposing the appellant's removal, and the DFFMO in initially referring C.B.'s complaints about the appellant to the agency's law enforcement and Office of Civil Rights. IAF, Tab 10 at 124-25. We find that the roles and motivations of these individuals are relevant to the clear and convincing evidence issue and that they must be considered in a proper evaluation of the evidence. *See McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 31 (2011) (explaining that, in evaluating the clear and convincing evidence issue, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012); *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012)

(holding that the Board must evaluate all the pertinent evidence in determining whether an element of a claim or defense has been adequately proven).

¶24    Next, we find that the DFFMO had a very strong motive to retaliate against the appellant. He was one of the individuals with whom the appellant engaged in the "heated discussions" at issue, he apparently disagreed with the appellant's position, and the appellant's disclosure directly implicated the DFFMO's duties and responsibilities. Furthermore, as the appellant argues on review, on June 10, 2014, shortly after the disclosure, a firefighter using maximum suppression tactics died while fighting a forest fire under the DFFMO's authority.[5] PFR File, Tab 1 at 9; IAF, Tab 6 at 125, Tab 24 at 6. As for the proposing official, we find that he had little, if any, motive to retaliate. Although the record shows that the proposing official was aware that the appellant made recommendations of some type regarding firefighting, which the agency ultimately rejected, there is no indication that he knew or was in any way concerned about the particulars of the appellant's disclosure. IAF, Tab 26 at 221, Tab 30 at 22. Moreover, the proposing official's position during the relevant time period was Deputy Regional Forester for Operations, and there is no indication that the proposing official or his duties and responsibilities were directly implicated in the disclosure or the subsequent death of the firefighter. IAF, Tab 30 at 21.

¶25    The appellant also disputes the administrative judge's finding that the deciding official had little motive to retaliate. PFR File, Tab 1 at 10; ID at 17. In particular, the appellant argues that the deciding official was formerly the Deputy Regional Forester for Fire and Aviation and "actually formulated and guided" the maximum suppression policy. PFR File, Tab 1 at 10. The appellant, however,

---

[5] The appellant also alleges that five more firefighters have died while using maximum suppression tactics during the pendency of this appeal. PFR File, Tab 1 at 9-10. Although this fact might strengthen the administrative judge's finding that the appellant's disclosure was protected, we find that it has no bearing on whether the agency proved by clear and convincing evidence that it would have suspended the appellant when it made its decision.

has not cited any specific evidence in support of his allegation apart from his EEO complaint and "the volumes of evidence provided in the record." *Id*. We have reviewed the appellant's EEO complaint, but we find nothing that would support his allegations about the deciding official's connection to the disclosure. IAF, Tab 26 at 217-19. The appellant is responsible for specifying with reasonable clarity in his petition for review the location of the evidence that he is relying on, but he has not explained where in the "volumes of evidence" any support for his allegations might be located. We therefore find that his arguments provide no basis to disturb the administrative judge's finding that the deciding official had little retaliatory motive. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (determining that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record which demonstrates the error), *review denied*, 669 F.2d 613 (9th Cir. 1982) (per curiam).

¶26 Regarding the third *Carr* factor, the administrative judge found that neither party presented evidence of similarly situated nonwhistleblowers and that this factor was therefore irrelevant. ID at 17-18. The appellant does not directly challenge this finding on review, and we see no basis to disturb it.

¶27 Weighing the two relevant factors together, we agree with the administrative judge's ultimate conclusion that the agency proved by clear and convincing evidence that it would have suspended the appellant even absent his disclosure. ID at 18. Although the DFFMO had a very strong motive to retaliate, we find that his influence over the agency's action was remote; he merely referred C.B.'s complaints to the appropriate officials. IAF, Tab 10 at 124-25. The investigation was actually conducted by another agency official at the appellant's supervisor's behest. *Id*. at 89-103. Although the DFFMO provided a declaration for the investigation that contained a rather unflattering depiction of the appellant's behavior, that declaration did not provide a basis for any of the

charges against the appellant, and there is no indication that it substantially influenced the course of the agency's action. *Id.* at 123-26. Furthermore, even if the DFFMO did nothing about C.B.'s complaint (which would be contrary to agency policy, as the DFFMO describes it), we find that the investigation still would have occurred and the appellant would have been disciplined because C.B. also complained to the appellant's supervisor, who ultimately initiated the investigation. *Id.* at 90, 224-25. In sum, we find that, although the DFFMO's motive to retaliate was very strong, he had little if any influence over the suspension. Considering the DFFMO's strong retaliatory motive and slight influence over the suspension, the proposing and deciding officials' slight motives and strong influence, and the strong evidence in support of the suspension decision, we agree with the administrative judge that the agency proved by clear and convincing evidence that it would have suspended the appellant notwithstanding his March 2013 disclosure.

The agency established that the deciding official considered all of the pertinent penalty factors and that the 30-day suspension was within the tolerable limits of reasonableness.

¶28        The administrative judge found that the deciding official considered all of the pertinent penalty factors and that his penalty selection was therefore entitled to deference. ID at 18-19. She further found that, in light of all these factors, the 30-day suspension was within the tolerable limits of reasonableness. ID at 19-21. On review, the appellant addresses each of the penalty factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), and argues that the 30-day suspension was inappropriate. PFR File, Tab 1 at 11-21.

¶29        Regarding the first *Douglas* factor, the nature and seriousness of the offense, and its relation to the appellant's duties, position, and responsibilities, the appellant appears to dispute the deciding official's finding that he and C.B. interact frequently at work. PFR File, Tab 1 at 11-12; IAF, Tab 9 at 35-36. However, the record, including C.B.'s declaration and the appellant's own

inappropriate email to C.B. regarding his timesheet, suggests that they do interact frequently at work.  IAF, Tab 10 at 85-86, Tab 30 at 29-30.

¶30        Regarding the second factor, the appellant's job level and type of employment, he argues that the deciding official failed to explain how this factor relates to the penalty analysis.  PFR File, Tab 1 at 12.  We disagree.  The deciding official found that the appellant is a supervisor and manager, and the agency expected him to be a leader and an example to the other employees.  IAF, Tab 9 at 37-38.  The deciding official's assessment of this factor is consistent with well-established Board precedent.  *See, e.g.*, *Hill v. Department of the Army*, 120 M.S.P.R. 340, ¶ 15 (2013) (noting that supervisors are held to a higher standard of conduct).

¶31         Regarding the third factor, the appellant's past disciplinary record, he argues that the administrative judge "ignore[d] whether or not this Factor had any bearing on [the deciding official's] decision."  PFR File, Tab 1 at 12.  However, an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision.  *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).  In any event, we have reviewed the record, and we find that the deciding official properly noted the appellant's lack of prior discipline.  IAF, Tab 9 at 38.

¶32        Regarding the fourth *Douglas* factor, the appellant's past work record, the appellant argues that the agency failed to consider his 11 years of prior employment with the Federal Bureau of Investigation (FBI).  PFR File, Tab 1 at 12-13; IAF, Tab 9 at 38.  We disagree.  On the last page of his *Douglas* factors worksheet, the deciding official emphasized the appellant's "clean disciplinary record for 22 years," a period encompassing his service with the FBI.  IAF, Tab 9 at 43.  The appellant also argues that the deciding official did not adequately consider his ability to get along with his coworkers.  PFR File, Tab 1 at 13.  Again, we disagree.  The record shows that the deciding official considered the

letters of support that the appellant's coworkers sent. IAF, Tab 9 at 38, Tab 10 at 27-32, 36-42, 46-48, 51-57, 66.

¶33     Regarding the fifth factor, the effect upon the appellant's ability to perform at a satisfactory level, and upon his supervisor's confidence in his ability to perform, the appellant again argues that the proposing and deciding officials were not his supervisors, and therefore their trust and confidence in him are irrelevant. PFR File, Tab 1 at 13; IAF, Tab 9 at 38-39. For the reasons explained above, we disagree. *Supra* ¶ 18.

¶34     Regarding the sixth factor, the consistency of the penalty with those imposed upon other employees for the same or similar offense, the appellant argues that the administrative judge erred in placing the burden on him to show that he was treated disparately. PFR File, Tab 1 at 14. This, however, is consistent with Board precedent, which requires that the appellant make an initial showing of disparate penalty before the burden shifts to the agency to justify the apparent disparity. *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 16 (2010). The appellant also argues that another employee, who occupies a similar position under the same supervisor, got into an argument with a coworker while on duty, in front of others, and called the coworker a "mother f***er" twice and used the word "f**k" several more times. PFR File, Tab 1 at 14. Yet this employee's penalty was only to "read the inclusiveness policy." *Id.* Assuming without deciding that the appellant's allegations are true, we find that this employee's actions, though improper, are not comparable to the appellant's; they occurred in one discrete incident, whereas the appellant was charged with multiple inappropriate communications over the course of several months, thus displaying a pattern of repeated misconduct.[6] *See Blow v. Department of the Navy*, 11 M.S.P.R. 102, 105 (1982) (reasoning that a single, spontaneous incident of pushing a coworker was not comparable to multiple instances of

---

[6] If the record contains any evidence of this comparison employee, we were unable to locate it. The petition for review contains no pertinent record citation.

insubordination and threatening to inflict bodily harm). The appellant also cites an incident in which another District Ranger under the same supervisor, during roughly the same time period, "was charged with sexual harassment of employees by distributing condoms to male subordinates on Agency property during work hours," but received only a 3-day suspension.[7] PFR File, Tab 1 at 15; IAF, Tab 22 at 23-27. Again, we find that this conduct, although improper, was not comparable to the appellant's because there was only a single occurrence. IAF, Tab 22 at 23.

¶35    Regarding factor seven, consistency with the agency's table of penalties, the appellant acknowledges that a 30-day suspension falls within the recommended range for a first offense of off-duty misconduct and inappropriate use of Government resources. PFR File, Tab 1 at 15; IAF, Tab 9 at 40, Tab 26 at 70-71. He argues, however, that the agency inappropriately considered that he was engaging in an adulterous affair. PFR File, Tab 1 at 15-16. We agree with the appellant that it would be inappropriate for the agency to discipline him for "misconduct that is private in nature and that does not implicate job performance in any direct and obvious way." *Doe v. Department of Justice*, 565 F.3d 1375, 1380 (Fed. Cir. 2009). However, notwithstanding the agency's reference to the appellant's "adulterous affair," IAF, Tab 9 at 40, we find that the agency's action was not based on the affair per se, but rather on the appellant's associated misconduct with a work colleague, which had a demonstrable connection to the workplace.

¶36    Regarding the eighth *Douglas* factor, the notoriety of the offense or its impact upon the reputation of the agency, the deciding official found that it was known among the appellant's coworkers and some individuals in the local

---

[7] Contrary to the appellant's description, the record shows that this conduct occurred during an off-duty going-away celebration, at which the employee in question supplied two piñatas filled with candy and condoms. IAF, Tab 22 at 23. This appears to us to have been a joke in poor taste, in contrast to the misconduct at issue here, the vast majority of which was intended to cause distress.

community from whom the appellant solicited letters of support in response to the proposed removal. IAF, Tab 9 at 40-41. Notwithstanding, it does not appear to us that this incident was publicized, widely known, or otherwise had a significant effect on the agency's reputation. Although the deciding official's assessment of this factor was ambiguous, we agree with the appellant that it was not an aggravating factor. PFR File, Tab 1 at 16.

¶37    Regarding the ninth factor, the clarity with which the appellant was on notice of any rules that he violated, the deciding official found that, as a District Ranger, the appellant should have been aware that his conduct was unacceptable. IAF, Tab 9 at 41. He also found that the appellant's conduct ran counter to the annual Prevention of Sexual Harassment training that he received, as well as certain agency policies and regulations, and his duties as a District Ranger. *Id*. On review, the appellant argues that he had not received the training and that the agency was using this factor to "shoehorn" a sexual harassment allegation into his case. PFR File, Tab 1 at 16-17. We read the deciding official's analysis not as accusing the appellant of additional uncharged misconduct but rather as listing the various reasons that the appellant should have known that the charged misconduct was unacceptable. IAF, Tab 9 at 41. In any event, we find that the appellant should have required no special training or instruction to realize that his conduct was inappropriate.

¶38    Regarding factor ten, the appellant's potential for rehabilitation, the deciding official acknowledged that the appellant expressed remorse for his actions, accepted responsibility, and cooperated with the agency throughout the investigation and discipline process. *Id*. at 42. This was tempered somewhat by the appellant's continued insistence that his communications were private and did not implicate his trustworthiness or reliability. *Id*. The deciding official concluded that, although he had lost trust in the appellant's judgment and ability to act professionally, he nevertheless believed, based on the appellant's statements and work history, that he had potential for rehabilitation. *Id*. On

review, the appellant argues that the proposing and deciding officials failed to consider his apology to C.B. and C.B.'s acceptance thereof. PFR File, Tab 1 at 17-18. We find, however, that, although the deciding official did not discuss this matter specifically, he adequately considered the appellant's statements of remorse as a whole and properly considered the appellant's rehabilitative potential to be a mitigating factor. IAF, Tab 9 at 42.

¶39 Regarding factor eleven, mitigating circumstances surrounding the offense, the appellant argues that the deciding official failed to consider adequately the intense personal difficulties that he was undergoing at the time, including his living separately from his wife due to the agency's broken promise to find a job for her nearby, his wife's being dragged into the acrimonious breakup of the affair, the death of the firefighter, and multiple false accusations by agency management. PFR File, Tab 1 at 18-20. We find, however, that, apart from the "false accusations," the deciding official considered all of these matters. IAF, Tab 9 at 42-43. We therefore disagree with the appellant that the agency minimized the difficult personal circumstances that contributed to his misconduct. PFR File, Tab 1 at 20.

¶40 Regarding the twelfth and last *Douglas* factor, the adequacy and effectiveness of alternative sanctions, the appellant asserts that the proposing official did not thoroughly analyze what alternative sanctions might have been appropriate. PFR File, Tab 1 at 20; IAF, Tab 10 at 76. However, notwithstanding any lack of analysis by the proposing official, we find that the deciding official adequately considered this factor, and it is the adequacy of the deciding official's consideration that is important. IAF, Tab 9 at 43; *see Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013) ("[I]f the *deciding official* failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination.") (emphasis added). The appellant also argues that the agency imposed other penalties against him in addition to the suspension, including an involuntary detail, permanent reassignment,

nonselection for promotion, and blackballing from other District Ranger positions. PFR File, Tab 1 at 20-21. However, we have not considered these matters, because, even if the agency took these actions against the appellant, they are not appealable to the Board.[8] *See Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (finding that a reassignment without loss of grade or pay is not an appealable action); *Pridgen v. Office of Management and Budget*, 117 M.S.P.R. 665, ¶ 6 (2012) (noting that a nonselection generally is not appealable to the Board); *Snow v. Department of the Air Force*, 39 M.S.P.R. 582, 584 (1989) (indicating that a temporary detail that does not involve a loss in pay or grade is not appealable to the Board).

¶41    For the reasons explained in the initial decision, we agree with the administrative judge that the deciding official appropriately considered the relevant penalty factors and that his selection of a 30-day suspension was within the tolerable limits of reasonableness. ID at 18-21. For the reasons explained above, the appellant has not provided an adequate basis to disturb the administrative judge's findings.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

---

[8] The appellant asserts that he was selected for a final interview for more than 30 District Ranger positions across the country but that he was not hired due to his protected disclosure. PFR File, Tab 1 at 21. Although this matter is not directly appealable to the Board, it may form the basis for an individual right of action appeal under 5 U.S.C. § 1221, provided that the appellant first exhausts his administrative remedies with the Office of Special Counsel under 5 U.S.C. § 1214(a).

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.   Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.   Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.